UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
═══════════════════════════════════════════════════════════════

O'BRIEN & GERE ENGINEERS, INC.

                      Plaintiff,

v.                                       5:10-CV-410 (NPM/ATB)

INNIS ARDEN GOLF CLUB,

                      Defendant.
═══════════════════════════════════════════════════════════════

APPEARANCES:                             OF COUNSEL:

Howrey LLP                             Andrew D. Lazerow, Esq.
Attorneys for Plaintiff               Christopher H. Marraro, Esq.
1299 Pennsylvania Avenue NW     Susanne M. Calabrese, Esq.
Washington, DC   20004

Law Offices of Frank A. Bersani, Jr.   Frank A. Bersani, Jr., Esq.
Attorney for Plaintiff
308 Syracuse Building
224 Harrison Street
Syracuse, NY       13202

Porter Nordby Howe LLP           Eric C. Nordby, Esq.
Attorney for Defendant
316 S. Clinton Street, Suite 400
Syracuse, NY       13202

NEAL P. McCURN, Senior U.S. District Court Judge

## MEMORANDUM - DECISION AND ORDER

    This is an action for breach of contract filed by plaintiff O'Brien & Gere Engineers, Inc. ("OBG") against defendant Innis Arden Golf Club ("IAGF").

OBG (a New York corporation with its principal place of business located in Syracuse, New York) asserts that this court has subject matter jurisdiction over IAGC (a Connecticut corporation with its principal place of business located in Old Greenwich, Connecticut), based on diversity of citizenship pursuant to 28 U.S.C. § 1332.  OBG states that the amount in controversy exceeds $100,000.00 exclusive of interests and costs, and that this court has supplementary jurisdiction over its claims for breach of contract pursuant to N.Y. C.P.L.R. § 302.  OBG also argues that venue is proper pursuant to 28 U.S.C. § 1391(a)(2) because a substantial part of the services it provided for IAGC took place within this judicial district.  Currently before the court is IAGC's motion to dismiss pursuant to Fed.R.Civ.P. Rule 12(b)(1-3, 6), or in the alternative, to transfer this case, in the interest of justice, to the District of Connecticut pursuant to 28 U.S.C. § 1404(a). (Doc. No. 19-14).  For the reasons set forth below, the motion to transfer will be granted based on this court's lack of personal jurisdiction over IAGC.

I.    FACTS AND PROCEDURAL HISTORY

The following facts are taken from OBG's complaint, IAGC's motion, supporting affidavits and other documentation before the court, pursuant to the required procedure for an inquiry into the threshold issue of jurisdiction.  For the purpose of the motion before the court, the facts are construed in the light most

favorable to OBG, the non-moving party.

In late 2004, IAGC was conducting a golf course renovation project that involved the dredging of ponds in order to expand the golf club's onsite water storage capacity. In support of its renovation permits, IAGC caused sediment samples to be taken from the area of renovation which were found to contain Polychlorinated Biphenyls ("PCBs"). Doc. No. 1, ¶ 10. In January of 2005, IAGC retained OBG to investigate the contamination and provide remediation services for the environmental investigation and cleanup of the PCBs located on IAGC's property. Id., ¶ 11. On April 20, 2005, the parties memorialized the OBG retention agreement by executing a professional services agreement ("Agreement") associated with the PCB remediation program and technical support for IAGC. The agreement provided that OBG would perform services and IAGC would pay for those services, said services and payment to be defined in future written correspondence from OBG (the "cost letters") that would be approved by IAGC. There were subsequently twenty one cost letters issued by OBG over the course of more than four years. Id., ¶¶ 12-14. The agreement also addressed the issue of indemnification between the parties (¶¶ 15-18). In addition, the agreement contained a choice of law clause, stating that "[t]his Agreement shall be interpreted and enforced in accordance with the Laws of the State of New York."

Id. at ¶ 19.

OBG initiated the remediation program pursuant to the Toxic Substances Control Act in January, 2005, and completed it in the summer of 2006.  The services OBG provided included taking and analyzing sediment samples, negotiating with the Federal Environmental and Protection Agency and the Connecticut Department of Environmental Protection, obtaining the necessary environmental permits and preparing reports for the EPA including a Remedial Action Work plan.  OBG rendered invoices for its services in carrying out the remediation plan, and IAGC paid all of OBG's invoices for the remediation program. OBG asserts that IAGC was satisfied with OBG's implementation and completion of the remediation program. Id., ¶¶ 20-22.

In March 2005, IAGC retained legal counsel to lead its efforts to recover the costs of the remediation program from those entities it alleged were legally responsible for the contamination.  OBG provided technical support to IAGC and its lead counsel throughout IAGC's cost recovery litigation.  IAGC lead counsel retained an OBG scientist as a testifying expert for IAGC. Id., ¶¶ 23, 27, 29.  OBG asserts that all of OBG's litigation support and expert witness services were satisfactorily rendered in accordance with the terms of the Agreement and were completed in accordance with the applicable standard of care.

As a basis for its complaint, OBG states that IAGC has breached the Agreement by failing to pay OBG $52,515.92 ("$52,500") for Invoice No. 1105961 within thirty days and failing to give OBG prompt notice of the basis for failing to pay the amount owed. OBG argues that the invoice included services, labor and expenses associated with cost letters # 20 and # 21, work that was authorized by IAGC's counsel and agent. Id., ¶¶ 70, 71. In the alternative to its breach of contract seeking payment for unpaid invoices, OBG brings claims against IAGC for unjust enrichment and breach of the implied duty of good faith and fair dealing.

In addition to the compensation sought, OBG seeks a declaratory judgment with regard to the above-mentioned technical litigation support and expert witness services that OBG rendered to IAGC in connection with IAGC's prosecution of an environmental cost recovery litigation against Pitney Bowes, Inc. and others in Innis Arden Golf Club v. Pitney Bowes, Inc. et al., 629 F.Supp.2d 175 (D.Conn. 2009) (JBA) (holding that environmental chemist would not be permitted to render expert opinion, and landowner failed to establish prima facie case of liability under CERCLA). OBG claims that upon the dismissal of that litigation by summary judgment in favor of Pitney Bowes, Inc., IAGC notified OBG that it would be seeking "'substantial damages' from the professionals, including OBG,

'for failure to meet the standard of care in their professions.'" Doc. No. 1, ¶ 1. OBG also seeks declaratory judgment on the issue of indemnification between the parties.

## II.   DISCUSSION

The court first considers jurisdiction, which is a threshold matter to be addressed prior to consideration of IAGC's other arguments. OBG asserts that this court has diversity jurisdiction over this matter pursuant to 28 U.S.C. 1332. However, IAGC argues that the court lacks subject matter jurisdiction over it pursuant to Fed.R.Civ.P. Rule 12(b)(1) because the amount in controversy, the $52,500 that OBG seeks to recover, does not meet the $75,000 jurisdictional threshold.

### A.   Subject Matter Jurisdiction

In a diversity case such as this one, "[t]he district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interests and costs, and is between -- citizens of different states ..... 28 U.S.C.A. § 1332 (a)(1) (West 2010). Here, OBG's complaint asserts that the amount in controversy is $100,000 exclusive of interests and costs, but despite seeking only $52,500 in actual compensation, it attempts to qualify its request based on future litigation regarding the "substantial damages" it

claims IAGC will be seeking. The court grants leave to OBG to amend its complaint to clarify the amount in controversy, if possible, to meet the requirements for subject matter jurisdiction pursuant to § 1332.

    **B.**    **Personal Jurisdiction**

IAGC also moves to dismiss for lack of personal jurisdiction inasmuch as its contacts with the State of New York are *de minimus*. Rule 12(b) of the Federal Rules of Civil Procedure allows the defense of "lack of personal jurisdiction." Fed.R.Civ.P. 12(b)(2) (West 2010). "In deciding a pretrial motion to dismiss for lack of personal jurisdiction a district court has considerable procedural leeway. It may determine the motion on the basis of affidavits alone; or it may permit discovery in aid of the motion; or it may conduct an evidentiary hearing on the merits of the motion." Marine Midland Bank, N.A. v. Miller, 664 F.3d 899, 904 (2d Cir. 1981). "A motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(2) is 'inherently a matter requiring the resolution of factual issues outside of the pleadings ... and all pertinent documentation submitted by the parties may be considered in deciding the motion' ... Therefore, ... facts are drawn from the complaint, declarations, and exhibits submitted by both parties, and are construed in the light most favorable to plaintiff." Energy Brands Inc. v. Spiritual Brands, Inc., 571 F.Supp.2d 458, 463 (S.D.N.Y. 2008) (citations omitted).

To begin the analysis, the court looks to the seminal cases in the area of personal jurisdiction, as interpreted in this circuit:

> In 1945, the Supreme Court held that states' power to exercise personal jurisdiction over defendants consistent with the federal Constitution was not contingent on those defendants' physical presence within the states' borders. Int'l Shoe,[1] 326 U.S. at 316. Instead, in order to exercise personal jurisdiction over out-of-state defendants, the Due Process Clause of the Fourteenth Amendment requires only that the defendants have certain minimum contacts with the forum state such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice. Id. (citation omitted).
>
> A court deciding whether it has jurisdiction over an out-of-state defendant under the Due Process Clause must evaluate the "quality and nature," Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475 (1985), of the defendant's contacts with the forum state under a totality of the circumstances test, id. at 485-86. The crucial question is whether the defendant has "purposefully availed itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws," id. at 475 (quoting Hanson v. Denckla, 357 U.S. 235, 253 (1958)) (internal quotation marks omitted) "such that the defendant should reasonably anticipate being haled into court there," id. at 474 (quoting World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980)) (internal quotation marks omitted).

Best Van Lines, Inc. v. Walker, 490 F.3d 239, 242-43 (2d Cir. 2007).

Next, the court looks to the laws in this state governing personal

---

[1] International Shoe Co. v. State of Washington, 326 U.S. 310, 66 S.Ct. 154 (1945).

jurisdiction. "In order to survive a motion to dismiss for lack of personal jurisdiction, a plaintiff must make a prima facie showing that jurdiction exists." Thomas v. Ashcroft, 470 F.3d 491, 495 (2d Cir.2006).

Section 302 of New York State's long-arm statute provides in pertinent part that

> (a) Acts which are the basis of jurisdiction. As to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any non-domiciliary, or his executor or administrator, who in person or through an agent:
>
> 1. transacts any business within the state or contracts anywhere to supply goods or services in the state; or
>
> 2. commits a tortious act within the state, except as to a cause of action for defamation of character arising from the act; or
>
> 3. commits a tortious act without the state causing injury to person or property within the state, except as to a cause of action for defamation of character arising from the act, if he
>
> (i) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or
>
> (ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce; or
>
> 4. owns, uses or possesses any real property situated

9

within the state.

N.Y. C.P.L.R. § 302(a) (McKinney's 2008).

For a court to exercise jurisdiction under N.Y. C.P.L.R. 302(a), "two conditions must be met--the non-domiciliary must 'transact business' within the forum state and the claim must also 'arise from' the transaction of business within the state ... To 'transact business' under CPLR § 302(a)(1), a non-domiciliary must 'purposefully avail himself of the privilege of conducting activities within New York, thus invoking the benefits and protections of its laws.'" Whitaker v. American Telecasting, Inc., 261 F.3d 196, 208. "The 'arises from' prong is satisfied if there exists a substantial relationship between the defendant's activities in the forum state and the transaction out of which the cause of action arose." Id. (internal citations and quotations omitted).

The Second Circuit recently held that an employee's single act of shipping a handbag to New York State gave rise to the district court's personal jurisdiction over the employee. Chloe v. Queen Bee of Beverly Hills, LLC, --- F.3d ---- , 2010 WL 3035495 (2d Cir. 2010). In Chloe, a trademark case, the court of appeals found that "by offering bags for sale to New York consumers on the Queen Bee website and by selling bags-including at least one counterfeit Chloé bag-to New York consumers, [the employee] has "purposefully availed himself of the privilege

of conducting activities within the forum State, thus invoking the benefits and protections of its laws." Id. at * 10.

In the case at bar, the court finds that IAGC did not avail itself of the privilege of conducting activities in the forum state. IAGC did not seek out OBG in New York, but contacted OBG at its offices in Edison, New Jersey. The contracts were negotiated between IAGC in Connecticut and OBG in New Jersey. Telephone calls and letters sent to New York, without more, is insufficient to confer jurisdiction. IAGC has committed no tortious act within or without New York State. IAGC made no sales in New York, is not licensed to do business in New York, has no offices, employees, business records, or agents in New York, nor does IAGC own property in New York. IAGC does not target customers, advertise or market in New York, or derive revenue from business activities in New York. Doc. No. 19-14 at p. 28. Accordingly, the court finds that it does not have personal jurisdiction over IAGC. The court now must determine whether to dismiss the case in its entirety for lack of personal jurisdiction, or in the alternative, as IAGC requests, transfer it to the District of Connecticut.

    **C.**    **Motion to Dismiss pursuant to Rule 12(b)(6)**

The function of a motion to dismiss is "merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in

support thereof." Ryder Energy Distribution v. Merrill Lynch Commodities, Inc., 748 F.2d 774, 779 (2d Cir. 1984). When deciding a motion to dismiss, the court must accept as true the well pleaded allegations of the complaint. Albright v. Oliver, 510 U.S. 266, 268, 114 S.Ct. 807 (1994). In addition, the allegations of the complaint should be construed favorably to the pleader. Scheuer v. Rhodes, 416 U.S. 232, 236, 94 S.Ct 1683 (1973). "[W]hen a complaint adequately states a claim, it may not be dismissed based on a district court's assessment that the plaintiff will fail to find evidentiary support for his allegations or prove his claim to the satisfaction of the factfinder." Bell Atlantic Corp. V. Twombly, 127 S. Ct. 1955, 1969 n.8 (May 21, 2007). To meet the standard of adequacy, the complaint should contain "enough facts to state a claim to relief that is plausible on its face." Id. at 1974. In the case at bar, IAGC moves to dismiss all counts, except for OBG's contract claim, for failure to state a claim, because the three claims are intrinsically tied to OBG's breach of contract claim, and redundant to same. Given IAGC's concession that the breach of contract allegation states a claim to relief that is plausible on its face, dismissal would be improper. Accordingly, the court will not dismiss this action pursuant to Rule 12(b)(6), but will instead consider IAGC's motion to transfer the action to the District Court of Connecticut.

    **D.**    **Determining the Proper Venue**

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it may have been brought." 28 U.S.C. § 1404(a) (West 2010). "Motions for transfer lie within the broad discretion of the district court, and the court is to exercise that discretion with reference to notions of convenience and fairness on a case-by-case basis. D.H. Blair & Co. v. Gottdiener, 462 F.3d 95, 106 (2d Cir.2006) (citing In re Cuyahoga Equip. Corp., 980 F.2d 110, 117 (2d Cir.1992)). The burden of demonstrating that the action should be transferred to another District lies with the moving party. Id." Federal Insurance Co. v. Custom Expedite LLC, 2009 WL 508393 at * 1 (S.D.N.Y. 2009).

> In considering a § 1404(a) motion, a court must determine first whether the case could have been brought in the proposed transferee district. Reliance Ins. Co. v. Six Star, Inc., 155 F.Supp.2d 49, 56 (S.D.N.Y.2001). The Court must then determine whether transfer is appropriate. D.H. Blair, 462 F.3d at 106. Factors informing that decision ... include: "(1) the plaintiffs' choice of forum, (2) the convenience of witnesses, (3) the location of relevant documents and relative ease of access to sources of proof, (4) the convenience of parties, (5) the locus of operative facts, (6) the availability of process to compel the attendance of unwilling witnesses, and (7) the relative means of the parties." Id. at 106-07.

Federal Insurance Co., 2009 WL 508393 at * 1.

In the case at bar, the burden is on IAGC to demonstrate to the court that the

13

action should be transferred to Connecticut, and the court finds that IAGC has met its burden.  The court finds that the factors it must consider in determining jurisdiction and venue tip the balance of fairness in favor of IAGC.  The action could have been brought in Connecticut because both IAGC and OBG are subject to personal jurisdiction there.  A majority of the party and non-party witnesses are located in Connecticut. The location of relevant documents and relative ease of access to sources of proof does not tip the scales in anyone's favor in this age of the electronic transmission of documents and overnight delivery.  The convenience of parties tips the scale in IAGC's favor as IAGC largely conferred with OBG's New Jersey office, the remediated property was located in Connecticut, as was the Pitney Bowes litigation, and the majority of services provided by OBG took place in Connecticut. The availability of process to compel the attendance of unwilling witnesses is neutral between the states, and OBG's choice of forum is diminished where, as here, the balance of factors weigh strongly in favor of a Connecticut venue.  IAGC asserts, and the court concurs, that the most relevant connection to the Northern District of New York is OBG's place of incorporation.  To be sure, New York is OBG's principal place of business, but the facts in the case at bar indicate that the Agreement between OBG and IAGC had no significant material connection to New York.  The relative means of the parties must also be

considered, and while IAGC is by all appearances a financially successful entity, OBG has more assets, higher gross revenue and operating income, therefore, it has a significant economic advantage over IAGC.

In reviewing the remediation services performed by OBG, the court finds that it sent soil specimens to its laboratory in Syracuse, and OBG's expert witness worked out of the Syracuse office. In fact, beside the fact that New York is OBG's place of incorporation, the only relevant basis OBG asserts for jurisdiction is the choice of law provision in its contract with IAGC. The court finds that IAGC has met its burden of demonstrating that the action should be transferred to the District of Connecticut. Accordingly, because the court finds that it does not have personal jurisdiction over the defendants in this matter, and because the defendants have moved to have this matter transferred to a venue in which it could have originally been brought, the court finds that the District of Connecticut is the appropriate venue for this matter.

### D. Choice of Law

IAGC asserts that the district court in Connecticut can ably interpret and apply New York law. The court concurs. "Under New York choice-of-law principles, which we apply as the law of the forum, see Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496-97... (1941), 'the first step in any case presenting a

potential choice of law issue is to determine whether there is an actual conflict between the laws of the jurisdictions involved.' Matter of Allstate Ins. Co. (Stolarz), 81 N.Y.2d 219, 223 ...(1993)." 2004 Stuart Moldaw Trust v. XE L.I.F.E., LLC, 2010 WL 915866 at * 2 (2d Cir 2010).  Insofar as the contract at issue here provides that the laws of the State of New York will govern, the court is confident that the District of Connecticut court will honor the intentions of the parties to the contract and interpret the substantive portion of the contract pursuant to New York law, should that law differ in substance to the governing law in the state of Connecticut.

### III. CONCLUSION

The court finds that while OBG states a plausible claim for breach of contract against IAGC, the court does not have personal jurisdiction over IAGC. Accordingly, that portion of IAGC's motion to dismiss OBG's breach of contract claim is hereby DENIED.  IAGC's motion to dismiss for lack of subject matter jurisdiction, or in the alternative, to transfer this case to the District of Connecticut (Doc. No. 19), is hereby GRANTED.  The court need not address the remaining issues in the motion, which are hereby DENIED as moot.  The Clerk is instructed to remove this case from the docket of the Northern District of New York and to transfer the case file to the United States District Court for the District of

Connecticut. The stipulation between the parties (Doc. No. 36), construed by the court as a motion for extension of time for the defendant to file reply papers, is DENIED as moot.

    SO ORDERED.

September 2, 2010

_/s/ Neal P. McCurn_
Neal P. McCurn
Senior U.S. District Judge